IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00370-MSK-MJW

ALEXISIUS JONES,

Plaintiff,

v.

PAULA FRANTZ, Chief Medical Doctor of Colorado Department of Corrections,
RICK RAEMISCH, Acting Executive Director, Colorado Department of Corrections,
JANICE EADS, N.P. at El Paso County Criminal Justice Center,
DR. AL-ABDULJAILIL, Doctor at El Paso County Criminal Justice Center,
JOANN STOCK, P.A. at CDOC Sterling Correctional Facility,
JOSEPH G. FORTUNATO, Doctor at CDOC (SCF),
DR. LINDSEY E. FISH dePENA, Doctor at CDOC Colorado Territorial Correctional
Facility,
MELISSA FILES, Nurse III at CDOC CTCF,
SUSAN TIONA, Director at CDOC CTCF,
DEBORAH SHOCK, P.A. at CDOC Four Mile Correctional Facility,
NASALLY WORKMAN, Nurse at CDOC Four Mile Correctional Facility,
TONY CUROICHI, Asst. Director of Colorado Department of Corrections,
BRENDA BRIESTER, Colorado Department of Corrections,
JULIE RUSSELL, AIC Headquarters of Colorado Department of Corrections,
MARY ANN ALDRICH, CTCF-Legal Coordinator at CDOC Colorado Territorial
Correctional Facility,
JOYCE CROUNK, HSA-CTCF, Coordinator at CDOC Colorado Territorial Correctional
Facility,
NURSE MELADEE SIMON, at CDOC Four Mile Correctional Facility,
TERRY MAKETA, Sheriff of El Paso County, and
PAMELA PLOUGHE, Warden of Canon Minimum Center,

Defendants.

---

**RECOMMENDATION ON
(1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (sic) AND TEMPORARY
RESTRAINING ORDER (Docket No. 48);
(2) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc. 50),
FED.R.CIV.P. 12(b)(1), 12(b)(6) FILED BY DEFENDANT TERRY MAKETA
(Docket No. 51); and
(3) MOTION TO DISMISS FILED BY DEFENDANTS RUSSELL, BREISTER, SHOCK,
SIMON, ALDRICH, AND CROUNK ("CDOC DEFENDANTS") (Docket No. 57)**

---

2

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued

by Chief Judge Marcia S. Krieger on May 7, 2013.  (Docket No. 19).

## PLAINTIFF'S ALLEGATIONS

The pro se incarcerated plaintiff's original Complaint was dated February 7,

2013, and was filed on February 11, 2013.  In that pleading, he named the following

eleven defendants: Frantz, Clements, Eads, Al-Abduljalil, Stock, Fortunato, Fish

dePena, Files, Tiona, Shock, and Walker.  On April 15, 2013, a First Amended

Complaint (Docket No. 13) was filed, which was dated April 9, 2013, and in which

plaintiff added defendants Curoichi, Brisko, Russell, Aldrich, Crounk, Simon, and

Maketa.  The operative pleading, however, is the plaintiff's Second Amended Complaint

(Docket No. 50), which was dated July 18, 2013, in which plaintiff substituted defendant

Workman for defendant Walker, added defendant Ploughe, and corrected defendant

Brisko's name to Breister.  Plaintiff is suing the defendants in both their personal and

their official capacities.  (See Docket Nos. 77 and 110).  Plaintiff asserts the following in

that Second Amended Complaint.

On March 30, 2009, plaintiff was injured in a work-related accident and taken to

Concentra Medical Centers where he was diagnosed with a thoracic sprain and strain,

contusion of the chest wall, and neck sprain and strain.  The doctor prescribed physical

therapy and medication to treat these injuries until further diagnosis.  The following

month, on April 29, 2009, plaintiff was arrested and taken to the El Paso County

Criminal Justice Center ("CJC").  While there, plaintiff contacted several medical staff about his ongoing injuries and need for medication and physical therapy.  Defendants Janice Eads, N.P., and Dr. Al-Abdulhalil failed to administer adequate medical treatment and denied any of the prescribed physical therapy.  Plaintiff informed defendant Sheriff Meketa of the denial of treatment through the jail's "kite" system.  Maketa denied plaintiff medical treatment, physical therapy, or the requested medical day trip to Concentra Medical Centers even though he witnessed plaintiff in pain and having mobility difficulty. As a result, plaintiff's injuries became more "acute and chronic."  (Docket No. 50 at 7).

On August 5, 2010, plaintiff was sent to the Colorado Department of Corrections ("CDOC") at the Denver Reception and Diagnostic Center ("DRDC") where plaintiff told medical staff about his injuries.  The staff ordered x-rays, but no treatment was provided because plaintiff was sent to a permanent facility.

On August 18, 2010, plaintiff was sent to the Sterling Correctional Facility ("SCF") at which he requested medical treatment.  Dr. Mellow diagnosed serious medical injuries, prescribed physical therapy, medications, and further exams, and recommended medical shoes and an adequate mattress.  Other SCF medical staff, however, took "an aggressive measure to avoid all medical treatment."  (Docket No. 50 at 80).  Therefore, no "adequate" treatment and no special accommodations were provided.  Dr. Mellow attempted to give her own form of physical therapy.

On an unspecified date, defendant Stock visited plaintiff and started blocking the treatment prescribed by Dr. Mellow and administered the ADA exam to plaintiff, but did not perform it correctly in order to "blunder" plaintiff's results intentionally.  Next, on an unspecified date, defendant Dr. Fortunato visited plaintiff and ordered that all of Dr.

Mellows' prescribed treatment be stopped even though he witnessed plaintiff in pain and having mobility difficulty.

On December 23, 2010, plaintiff was transferred to Colorado Territorial Correctional Facility (CTCF) where plaintiff requested medical treatment for his serious medical injuries.  On an unspecified date, defendant Dr. Fish de Pena visited plaintiff and intentionally failed to give adequate medical care or order the necessary exams for plaintiff, though she witnessed plaintiff in pain and having mobility difficulty.  In order to hinder adequate treatment, defendants Crounk and Files began hiding medical files and intercepting medical kites and letters directed to other medical staff (including doctors) and answering them with their opinions.  Crounk stopped plaintiff from receiving adequate medical care and lied about the findings from plaintiff's medical exams, though she witnessed plaintiff in chronic pain and having mobility difficulty.  Defendant Russell of AIC Headquarters hindered plaintiff from receiving proper medical attention and accurate ADA exams and thus stopped plaintiff from receiving adequate medical care.

While at CTCF, plaintiff's family members attempted to contact defendants CTCF Legal Coordinator Aldrich and Warden Ploughe several times.  Plaintiff also communicated in person and written letters stating the medical problem and pain that were still occurring.

On an unspecified date, CTCF Dr. Havens visited plaintiff and immediately recognized the serious injuries plaintiff was suffering and started physical therapy and provided the ADA exam again.  He also issued plaintiff "his medical accommodation and a cane" and stated that he needed to examine the plaintiff again to make sure he could

further assist the treatment of his injuries.  However, defendant CTCF Dr. Tiona

immediately attempted to hinder plaintiff's treatment even though she witnessed him in

pain and having mobility difficulty.  She purposely prescribed plaintiff "psych-

medications" as a way to stop him from complaining about his injuries.

On January 18, 2012, defendants CDOC Assistant Director Curoichi, Breister,

and Warden Ploughe were informed of the above actions and of the conduct of their

medical staff in theCDOC.  Plaintiff's family members attended a public meeting, and

plaintiff previously wrote a letter stating the medical problem and pain that were and still

occurring, but he was ignored.

On March 15, 2012, plaintiff was moved to Four Mile Correctional Facility

("FMCF") and immediately requested medical treatment for his injuries that were getting

worse.  Dr. Havens was precluded from performing the necessary follow-up exam and

the second part of the ADA screening.  Defendant P.A. Shock provided the second part

of the ADA evaluation and deliberately blundered the exam by forcing the necessary

movements and accused plaintiff of faking his injuries though she witnessed him in pain

and having mobility difficulty.  Shortly after, Shock and defendants Nurse Simon, Nurse

Workman, and CDOC Chief Medical Dr. Frantz plotted to take away the plaintiff's

medical accommodations and his cane, stating he was a fake.  Shortly thereafter, Dr.

Ferguson took plaintiff's cane and medical accommodations, stating she was instructed

by Frantz to do so through an e-mail "because of a non existing video footage at

[FMCF] in 2012."  Frantz did not conduct any physical exam of plaintiff before making

such order.

6

As of May 24, 2012, plaintiff had not been able to get any treatment due to the actions of those above.

Plaintiff raises the following three claims for relief.  In Claim One, he alleges an Eighth Amendment violation because the defendants have denied and hindered adequate medical care for the plaintiff.  They were aware of his serious medical injuries and failed to administer adequate treatment or physical therapy for the serious medical injuries.  His injuries have gotten worse due to the lack of adequate medical treatment, and plaintiff remains in discomfort and suffering, and the serious injuries affect his daily movement and activities.  In Claim Two, plaintiff alleges negligence, asserting that "defendants are negligent and medically negligent in failing to administer adequate medical treatment to the plaintiff.  The defendants had a duty of care to the plaintiff and were well aware of his serious medical injuries and failed to administer adequate treatment or physical therapy." (Docket No. 50 at 12).  In Claim Three, plaintiff alleges outrageous conduct, asserting that "defendants [sic] actions were outrageous in failing to administer adequate medical treatment to the plaintiff.  The defendants were aware of his serous medical injuries and failed to administer adequate treatment or physical therapy.  To allow the furthering of the injuries and suffering of the plaintiff, the defendants [sic] actions were strictly outrageous."  (Docket No. 50 at 13).  Plaintiff seeks monetary, declaratory, and injunctive relief.

## PENDING MOTIONS

Now before the court for a report and recommendation are the following three motions:  (1)) Plaintiff's Motion for Preliminary Injuction [sic] and Temporary Restraining Order (Docket No. 48), (2) a Motion to Dismiss Plaintiff's Second Amended Complaint

(Doc. 50), Fed.R.Civ.P. 12(b)(1), 12(b)(6) filed by defendant Terry Maketa

(Docket No. 51), and (3) a Motion to Dismiss filed by defendants Russell, Breister,

Shock, Simon, Aldrich, and Crounk (the "CDOC Defendants") (Docket No. 57).[1]  The

CDOC defendants filed a Response to the first motion.  (Docket No. 58).  Plaintiff filed

Responses to the two motions to dismiss.  (Docket Nos. 60 and 72).  Defendant Maketa

filed a Reply (Docket No. 69), and plaintiff filed a Response thereto.  (Docket No. 83).

The court has considered all of these motion papers as well as applicable Federal Rules

of Civil Procedure and case law and has taken judicial notice of the court's file.  The

court now being fully informed makes the following findings, conclusion of law, and

recommendations.

### Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order

Plaintiff seeks a preliminary injunction and a temporary restraining order ("TRO")

"to ensure that he receives adequate medical treatment and no further denial of medical

---

[1]Defendants Joann Stock, Joseph Fortunato, Lindsey Fish dePena, Melissa Files, Susan Tiona, Deborah Shock, and Tony Curoichi have not yet been served and have not yet waived service inasmuch as plaintiff has not yet provided addresses where service may be made.  (See Docket No. 97).  A Show Cause Hearing is thus set for December 10, 2013, at 8:30 a.m.  (Docket Nos. 97 and 98).  Previously, plaintiff stated in a Response to a previous Show Cause Order that defendants Stock, Fortunato, Fish dePena, Shock, Curoichi were "severed" from the Complaint.  (Docket No. 54 at 2).  Plaintiff, however, has not moved to dismiss his claims against these defendants.

Defendants Frantz, Raemisch, Workman, and Plough were served or waived service only recently (see Docket Nos. 82, 91, and 93), and yesterday they filed a Motion to Dismiss (Docket No. 112).

Defendants Eads and Al-Abduljalil have filed an Answer to the Second Amended Complaint.  (Docket No. 55).

treatment and/or mistreatment."  (Docket No. 48).

"A [TRO] or preliminary injunction is extraordinary relief."  Statera, Inc. v. Hendrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009).  Injunctive relief should be granted only when the moving party clearly and unequivocally demonstrates its necessity.  See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  Id.  "In addition to the foregoing factors, a party seeking a [TRO] also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a [TRO]."  Statera, 2009 WL 2169235, *1.

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits."  Schrier, 427 F.3d at 1258-59 (citation and quotations omitted).  "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" Id. at 1259.

Here, this court finds that the plaintiff has offered only conclusory assertions that the defendants have denied him "adequate" medical care and that his injuries have become worse as a result.  As defendants correctly assert, plaintiff has not alleged that they have ignored or failed to respond to his medical needs.  In fact, a review of his pleading shows that he received medical care, including a x-ray, exams by doctors and other medical staff, ADA screenings, etc.  Plaintiff does not specify how the medical care provided is allegedly inadequate and how he has allegedly suffered as a result. The only specific information he provides is the ER doctor's alleged initial diagnosis (thoracic sprain and strain, contusion of the chest wall, and neck sprain and strain) and prescribed treatment issued following plaintiff's work-related injury years ago in March 2009 prior to his incarceration.  The court finds that the plaintiff has thus not established the elements necessary for the entry of a preliminary injunction or a TRO.  He has not shown that he will suffer irreparable injury unless an injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party, and that there is a substantial likelihood of success on the merits. Plaintiff has not clearly and unequivocally established that a preliminary injunction and/or a TRO are necessary.  Therefore, it is recommended that the plaintiff's motion be denied.

### Motions to Dismiss

Defendant Maketa and the CDOC defendants move to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The CDOC defendants seek dismissal on the following grounds: (1) they are entitled to immunity pursuant to the Eleventh Amendment to the extent plaintiff is suing them in their official

capacity for damages, (2) plaintiff's Eighth Amendment claim fails to state a claim upon

which relief can be granted, (3) plaintiff's claims are barred by the statute of limitations,

(4) they are entitled to qualified immunity, and (4) Claims Two and Three should be

dismissed for lack of subject matter jurisdiction due to the Colorado Governmental

Immunity Act.   Defendant Maketa seeks dismissal on the following grounds: (1)

plaintiff's claims are barred by the statute of limitations, (2) plaintiff fails to state a claim

for deliberate indifference to serious medical needs, and (3) the court should decline to

exercise jurisdiction over the remaining state law claims.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

11

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d

12

1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'"  Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor

13

syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .

At the same time, . . . it is [not] the proper function of the district court to assume the

role of advocate for the pro se litigant." Id.

Statute of Limitations.  Sheriff Maketa first asserts that the plaintiff's claims

against him are barred by the statute of limitations.  Plaintiff's § 1983 and state law

claims are governed by the two-year statute of limitations contained in § 13-80-102,

C.R.S.  See Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated

Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law,

rather than state law, determines when a federal claim accrues.  The statute of

limitations begins to run when the plaintiff knows or has reason to know of the existence

and cause of injury which is the basis of his action.  Kripp v. Luton, 466 F.3d 1171, 1175

(10th Cir. 2006); Industrial Constructors Corp. v. United States Bur. of Reclamation, 15

F.3d 963, 969 (10th Cir. 1994).  For plaintiff's state law claims, pursuant to Colorado

statute, they similarly "accrue on the date both the injury and its cause are known or

should have been know by the exercise of reasonable diligence."

§ 13-80-108(1), C.R.S.

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates

on its face that the statute of limitations has expired.  See Aldrich v. McCulloch Props.

Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  Here, the original Complaint was dated

February 7, 2013.  Plaintiff avers therein and in the Second Amended Complaint that

almost four years before, on March 29, 2009, he was taken to the El Paso CJC, and he

was sent to the CDOC on August 5, 2010.  Therefore, any alleged actions by Maketa

while at the CJC took place well over two years prior to the commencement of this

action and well over two years before the filing of the First Amended Complaint (Docket No. 13) in which Maketa was first named.

Plaintiff asserts in his Response (Docket No. 39) that his claim did not accrue, at the latest, on the day of his release from the CJC when he was sent to the CDOC. Instead, he says his claim against Maketa accrued later because his injuries "were directly exasperated [sic] by the Defendant's actions.  Sheriff Maketa was the proximate cause of the Plaintiff's injuries which could not be determined over a period of time and until a later date by a DOC physician.  Had the Defendant acted in his Offcial [sic] capacity, he would have provided proper care which would not have effected the Plaintiff's long term care and disposition."  (Docket No. 39 at 2).

As defendant asserts in his Reply, plaintiff appears to be raising a "discovery rule" which has been applied when a plaintiff could not through reasonable diligence have discovered the nature of the injury immediately.  See Cannon v. United States, 338 F.3d 1183, 1190 (10th Cir. 2003).  This court agrees with the defendant that the claim against Maketa is not such a claim.  Plaintiff knew he had been injured in a work-related incident prior to his incarceration, and he knew the diagnosis and treatment prescribed therefor prior to his incarceration.  Plaintiff alleges he complained of improper or inadequate treatment of such injury to Maketa through the CJC's grievance system.  (See Docket No. 13 at 7, ¶ 4).  Therefore, there is no latent discovery here.  "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run."  Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).  Therefore, it is recommended that the plaintiff's §

15

1983 and state law claims against Maketa be dismissed with prejudice as time barred.[2]
Based upon this recommendation, the court will not address Maketa's other grounds for
dismissal.

      The CDOC defendants also raise a statute of limitations defense.  They assert
that plaintiff "has been incarcerated within CDOC since August 5, 2010, when he was
sent to the [DRDC]. . . .   Furthermore, all of [plaintiff's] allegations regarding his
treatment while at SCF and CTCF appear to pre-date February 11, 2011. . . .   As a
result, [plaintiff's] claims are barred by the two-year statute of limitations."  (Docket No.
57 at 12-13).

      A review of the Second Amended Complaint shows that all of the alleged acts
taken while plaintiff was at the SCF occurred more than two years before this action
was commenced.  Plaintiff avers that he arrived there on August 18, 2010, and was
transferred out to CTCF on December 23, 2010.  Therefore, all claims that allegedly
arose during that time period (which are against unserved defendants Stock and
Fortunato) are time-barred.  However, a determination of the timeliness of the plaintiff
claims concerning his care at the CTCF are not so clear-cut.  Plaintiff avers he was
transferred there on December 23, 2010, and was subsequently moved to FMCF on
March 15, 2012.  Plaintiff alleges defendants Fish De Pena, Crounk, Files, Aldrich,
Ploughe, Havens, and Tiona deprived him of proper or adequate medical treatment

---

[2]Plaintiff also raises claims against defendants Eads and Al-Abdulhalil based
upon their alleged acts at the CJC during the same time period.  Eads and Al-Abduljalil
have filed an Answer (Docket No. 55) in which they assert, *inter alia*, a statute of
limitations affirmative defense.  They have not moved to dismiss the Second Amended
Complaint, nor did they join in Maketa's motion.

16

during his stay at CTCF, but he does not give any specifics concerning dates of their

alleged acts.  He merely provides the date he arrived at the facility and the date he was

transferred.  There is a short period of time before his transfer out of CTCF during which

any alleged acts would not be time-barred.  Since it is thus not clear on the face of the

pleading that the statute of limitations has expired, dismissal under Fed. R. Civ. P.

12(b)(6) would not be proper with respect to plaintiff's claims concerning events at the

CTCF.  See Aldrich v. McCulloch Props. Inc., 627 F.2d at 1041 n.4.

State Claims.  The CDOC defendants assert that the plaintiff's two state law

claims (Claim Two for negligence and Claim Three for outrageous conduct) should be

dismissed for lack of subject matter jurisdiction due to the Colorado Governmental

Immunity Act ("CGIA").  Under the CGIA, public employees are granted immunity from

tort claims that arise out of an act or omission occurring during the performance of

duties and within the scope of employment.  § 24-10-118(2)(a), C.R.S.  Public

employees, however, are not immune from tort claims if the employees' acts or

omissions causing injury were "willful and wanton." Id.  Here, plaintiff did not aver any

facts to show that the CDOC defendants' acts or omissions were willful and wanton.

This court thus finds that the plaintiff's state law tort claims against the CDOC

defendants are barred by the CGIA because Colorado did not waive immunity to

plaintiff's tort claims.  Garcia v. Chamjock, Civil Action No. 11-cv-00263-PAB-MEH,

2012 WL 638145, at *3 (D. Colo. Feb. 27, 2012) (dismissing inmate's medical

negligence and outrageous conduct claims) (citing § 24-10-106(1.5)(a), C.R.S.;

Middleton v. Hartman, 45 P.3d 721, 730 (Colo. 2002)).  Plaintiff is an inmate

incarcerated in a state correctional facility pursuant to a criminal conviction, and thus his

state tort claims are barred because Colorado's waiver of immunity does not "apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction." § 24-10-106(1.5)(a), C.R.S.  Therefore, plaintiff's state law claims for outrageous conduct and medical negligence against the CDOC defendants should be dismissed.[3]

Official Capacity Claims.  The CDOC defendants also assert that to the extent the plaintiff is suing them in their official capacity for damages, they are entitled to immunity pursuant to the Eleventh Amendment.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's claims against the defendants are against them in their official capacities for monetary damages, and also for declaratory relief, see Garcia v. Chamjock, 2012 WL 638145, at *1, such relief is barred by the Eleventh Amendment, and any such claims should be dismissed with prejudice.

Eighth Amendment Claim.  The CDOC further assert that the plaintiff's Eighth

---

[3]There is also no indication that the plaintiff complied with the CGIA's notice provisions prior to filing the state law claims here.  See § 24-10-109, C.R.S.  Failure to provide notice to the proper entity in the proper form bars the claim.  Garcia v. Chamjock, 2012 WL 638145, at *2 (citing § 24-10-118(1)(a), C.R.S.; Middleton v. Hartman, 45 P.3d 721, 730 (Colo. 2002) ("the plain language of the notice-of-claim provisions unambiguously requires notice in a suit against a state employee in which the plaintiff seeks to hold the state employee personally liable . . . .")).

18

Amendment claim fails to state a claim upon which relief can be granted.  "[P]risoners

have an Eighth Amendment right to adequate medical care . . . ."  Oxendine v. Kaplan,

241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle that government

officials are generally afforded wide latitude when fulfilling their discretionary functions, .

. . however, in cases where prisoners allege that inadequate or delayed medical care

violated their Eighth Amendment rights, it has been established that '[p]rison officials

violate the Eighth Amendment [only] when they are deliberately indifferent to the serious

medical needs of prisoners in their custody.'"  Id.  "[T]he Constitution is only implicated

in situations in which prison officials act purposefully to impose unnecessary pain on an

inmate; 'inadvertent' denials of care or negligent diagnosis or treatment does not rise to

the level of an 8th Amendment violation."  Ajaj v. Federal Bureau of Prisons, 2011 WL

902440, at *16 (D. Colo. Mar. 10, 2011).  To plead an Eighth Amendment claim of

deliberate indifference to medical needs, "an inmate must allege: (1) that he suffered

from a serious medical need–that is, one that has been diagnosed by a medical

provider as requiring treatment or one which even a lay person would easily recognize

as requiring medical attention; and (ii) the Defendant was subjectively aware of that

need and that failing to treat it would pose an excessive risk to the inmate's health or

safety, but nevertheless elected to delay or deny treatment for it."  Id.  "The subjective

component requires an examination into the defendant's actual state of mind.  To satisfy

this element, the inmate must plead facts that show that the defendant both 'actually

knew of' and 'deliberately disregarded' the fact that the inmate was suffering from a

serous medical need."  Id.

        In this case, with regard to defendant Julie Russell, plaintiff merely asserts that

19

she "would hinder plaintiff from receive [sic] proper medical attention and accurate ADA

exams.  Therefore stopping plaintiff from receiving adequate medical care."  (Docket

No. 50 at 9, ¶ 13).  Regarding defendant P.A. Deborah Shock,[4] plaintiff merely asserts

that she deliberately "blundered" the part of the ADA evaluation she performed and

accused plaintiff of faking his injuries, and with others "plotted" to take away his medical

accommodations and his cane, "stating he was a fake."  (Docket No. 50 at 9, ¶¶ 19, 20).

The only allegation regarding defendant nurse Meladee Simon is that she was one of

the individuals who plotted with Shock to take away plaintiff's medical accommodations

and cane.  (Docket No. 50 at 9, ¶ 20).  With regard to defendant CTCF HSA Joyce

Crounk, plaintiff merely asserts that she began hiding medical files to "hinder the

adequate treatment for the Plaintiff's serious medical injuries," hindered medical service

by intercepting kites and letters addressed to other medical staff and answering them

with her opinion, stopped plaintiff from receiving "adequate medical care," and hid and

lied about the plaintiff's medical exams.  (Docket No. 50 at 9, ¶¶ 11, 12).  This court

finds that the plaintiff's generalized, conclusory allegations concerning these defendants

do not plead "enough facts to state a claim to relief [as against them] that is plausible on

its face," so as to withstand a motion to dismiss pursuant to Rule 12(b)(6).  Bell Atlantic

Corp. v. Twombly, 550 U.S. at 570.  Even under the liberal pleading standards applied

to pro se litigants, "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d

at 1110.  Read liberally, it appears plaintiff is merely asserting his disagreement with the

---

[4]As noted above, plaintiff has stated that Shock (and certain other defendants) were "severed" from the Complaint.  See Docket No. 54 at 2.

assessments, methodologies, diagnoses, and treatments provided, which does not state a claim of constitutional magnitude. A medical difference of opinion is not actionable under the Eighth Amendment. Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005). Defendants' refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference. See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). Furthermore, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). Here, plaintiff has not alleged any specific substantial harm as a result of any delay in obtaining his desired treatment. His bald allegations are insufficient to state an Eighth Amendment claim.

Regarding defendant Brenda Breister, plaintiff merely asserts that on January 18, 2012, she and two others "were informed all the above actions [set forth in the Second Amended Complaint] and conduct of their medical staff in CDOC," apparently by several of plaintiff's family members who attended a CDOC public meeting. Regarding defendant Mary Ann Aldrich, CTCF Legal Coordinator, plaintiff avers even less involvement, merely asserting that his family members attempted to contact her several times. (Docket No. 50 at 9, ¶ 14). The court finds that these allegations, without more, do not establish the requisite personal involvement in the alleged Eighth Amendment violation. See Davis v. Arkansas Valley Corr. Fac., 99 F. App'x 838, 843 (10th Cir. May 20, 2004) (unpublished) (sending correspondence to the warden outlining complaints

about medical care, without more, does not sufficiently implicate the warden under §

1983); Plumman v. Cozza-Rhodes, 2013 WL 1365830, at *3 (D.Colo. Apr. 4, 2013)

(merely writing a letter to an individual about a constitutional violation does not establish

personal participation by the recipient of the letter under § 1983). Therefore, it is

recommended that the Eighth Amendment claim against defendants Breister and

Aldrich be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Plaintiff's Motion for Preliminary Injuction [Sic] and

Temporary Restraining Order (Docket No. 48) be **DENIED**. It is further

**RECOMMENDED** that the Motion to Dismiss Plaintiff's Second Amended

Complaint (Doc. 50), Fed.R.Civ.P. 12(b)(1), 12(b)(6) filed by Defendant Terry Maketa

(Docket No. 51) be **GRANTED**. It is further

**RECOMMENDED** that the Motion to Dismiss filed by Defendants Russell,

Breister, Shock, Simon, Aldrich, and Crounk (Docket No. 57) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need**

**not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives _de novo_ review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

22

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  November 22, 2013                          <u>s/ Michael J. Watanabe      </u>
      Denver, Colorado                          Michael J. Watanabe
                                 United States Magistrate Judge